JODI LINKER, Bar No. 230273
Federal Public Defender
Northern District of California
KARTHIK RAJU, Bar No. 311303
Assistant Federal Public Defender
19th Floor Federal Building - Box 36106
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone:   (415) 436-7700
Facsimile:   (415) 436-7706
Email:       Karthik_Raju@fd.org

Counsel for Defendant Mitchell

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RONNIE MITCHELL,<br><br>Defendant. | **Case No.:** CR 25–384 SI<br><br>**DEFENDANT'S REPLY TO GOVERNMENT'S SENTENCING MEMORANDUM**<br><br>**Court:**  Courtroom 1, 17th  Floor<br>**Hearing Date:**  May 8, 2026<br>**Hearing Time:**  11:00 a.m. |

## I.    MR. MITCHELL IS ENTITLED TO A REDUCTION UNDER § 2P1.1(b)(3).[1]

The four-level reduction under § 2P1.1(b)(3) applies to Mr. Mitchell because his offense is precisely what that provision was designed to address: escape from non-secure, community-based custody in a "halfway house." The government's sole basis for withholding that reduction is Mr. Mitchell's alleged October 8 "felony evasion of police" in violation of California Vehicle Code § 2800.2. Gov't Sent. Mem. 4. That is no reason to deny Mr. Mitchell the reduction.  The government

---

[1] Mr. Mitchell apologizes for filing this reply brief so late, but did so as quickly as possible after the government filed its sentencing memorandum four days late leaving little time for this reply.

is correct that the § 2P1.1(b)(3) reduction does not apply "if the defendant, while away from the facility, committed any federal, state or local offense punishable by a term of imprisonment of one year or more." USSG § 2P1.1(b)(3). For example, this proviso has been invoked to deny reductions to escapees who, while on the run, committed "armed robbery," *United States v. Lujan*, 637 F. Supp. 3d 1233, 1237 (D.N.M. 2022); "conspire[ed] to distribute six kilograms of cocaine," *United States v. Strachan*, 968 F.2d 1161, 1163 (11th Cir. 1992); or were "convicted for driving while intoxicated," *United States v. Mendiola*, 42 F.3d 259, 261 (5th Cir. 1994). The common theme for these cases is that the escapee's crime was separate from the escape. Not so with Mr. Mitchell. The officers who encountered Mr. Mitchell on October 8 were not stopping him for a separate traffic violation or some unrelated infraction; they were attempting to arrest him on the escape that was already underway. His alleged attempt to avoid that arrest was part of his single continuing offense, not the beginning of a new one. *See United States v. Bailey*, 100 S. Ct. 624 ("[E]scape from federal custody as defined in § 751(a) is a continuing offense[.]"). The government has not cited any case in which the defendant's mere attempt to evade capture—which is inherent in every escape—was counted as a separate crime under § 2P1.1(b)(3).[2]

## II.     AS A THRESHOLD MATTER, THE § 3C1.2 ENHANCEMENT SHOULD NOT APPLY BECAUSE THE GOVERNMENT HAS NOT CARRIED ITS BURDEN OF PROOF.

The § 3C1.2 enhancement cannot be imposed because the government has not met its burden of proof. Section 3C1.2 applies only where a defendant "recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer." U.S.S.G. § 3C1.2. The government therefore bears the burden of establishing both a "substantial risk" and the prospect of "death or serious bodily injury" by a preponderance of the evidence. It has not done so here.

The government relies on the existence of the pending California Vehicle Code § 2800.2 charge and allegations of speeding. But § 2800.2 reaches a much broader range of conduct than § 3C1.2. Section 2800.2 criminalizes flight involving "willful or wanton disregard for the safety of

---

[2] In *United States v. Durham*, 178 F.3d 796 (6th Cir. 1999), the only case cited by the government, the separate crime was the defendant's "assault of state and federal officers." *Id.* at 798. There is no similar allegation here.

DEFENDANT'S SENTENCING REPLY
*MITCHELL*, CR 25–384 SI

persons or *property*," and that element may be satisfied either through three or more point-bearing traffic violations under § 12810 or through mere "damage to property." Cal. Veh. Code § 2800.2. A defendant can therefore violate § 2800.2 by speeding plus two additional point-bearing infractions, or by causing minor property damage, without ever creating a substantial risk of death or serious bodily injury to another person. The government cannot meet its burden under § 3C1.2 simply by pointing to a § 2800.2 charge — the two standards are not the same. On this record, the government has not presented the evidence that applying § 3C1.2 requires, and the enhancement should not apply.

**III.    EVEN IF THE COURT GRANTS THE § 2P1.1(b)(3) REDUCTION, THE § 3C1.2 ENHANCEMENT STILL DOES NOT APPLY, BECAUSE § 3C1.2 AND § 2P1.1 REACH THE SAME CONDUCT — MR. MITCHELL'S ALLEGED FLIGHT.**

Even if the Court agrees that Mr. Mitchell remains eligible for the four-level reduction under § 2P1.1(b)(3), the § 3C1.2 enhancement still does not apply, because it rests on the very same conduct the Court would necessarily have found to be part of the continuing escape offense. To grant the reduction is to recognize that Mr. Mitchell's alleged October 8 flight was part of the escape — not a separate disqualifying offense. Section 3C1.2 then has nothing left to do: there is no "course of fleeing law enforcement" left over and apart from the escape itself for the enhancement to reach. Section 2P1.1, with the four-level reduction for non-secure custody, already accounts for that flight in full. Applying § 3C1.2 on top would simply add two levels for the very conduct the § 2P1.1 calculation has already encompassed.

**IV.    THE § 3C1.2 ENHANCEMENT DOES NOT APPLY — AND APPLYING IT WHILE ALSO DENYING THE § 2P1.1(b)(3) REDUCTION WOULD IMPERMISSIBLY DOUBLE COUNT THE SAME ALLEGED FLIGHT.**

In all instances, the Court cannot impose the enhanced offense level under § 2P1.1(b)(3) *and* the enhancement under § 3C1.2 as that would result in impermissible double counting. The government concedes that the same conduct — Mr. Mitchell's alleged flight from law enforcement — underlies both its requested § 3C1.2 enhancement and the denial of the four-level reduction under § 2P1.1(b)(3). It nonetheless urges the Court to apply the enhancement, relying on a Sixth Circuit decision, *United States v. Durham*, 178 F.3d 796 (6th Cir. 1999), for the proposition that this compounded harm is permissible. *Durham* misreads the Guidelines and is inconsistent with the Ninth Circuit's double-counting framework. And even if government's calculations were permissible, the

Court should vary downward under § 3553(a) to avoid the functional equivalent of double counting.

**A. Application Note 1 to USSG § 3C1.2 dictates that the Reckless-Endangerment Enhancement does not apply to Mr. Mitchell, and the government's contrary argument cannot be squared with the Note.**

Under USSG § 3C1.2, the defendant's offense level is increased by two, if the defendant "recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer." But Application Note 1 to § 3C1.2 states that this enhancement does not apply "where the offense guideline in Chapter Two . . . results in an equivalent or greater increase in offense level solely on the basis of the same conduct." If the Court determines Mr. Mitchell was reckless in the course of fleeing from a law enforcement officer that will increase his offense level in Chapter Two to thirteen instead of nine. *See* USSG § 2P1.1(a), (b)(3). Because this four-level increase is greater than the two-level increase in § 3C1.2, and would be based solely on the same conduct, the reckless-endangerment enhancement does not also apply. *See* USSG § 3C1.2, n.1.

The government's contrary argument relies entirely on the Sixth Circuit's decision in *Durham*, 178 F.3d at 799-800. The Court should not follow *Durham* for several reasons. First, it is non-binding, out-of-circuit authority. Second, its discussion of the Sentencing Guidelines was dictum. In *Durham*, the defendant apparently failed to object to the § 3C1.2 enhancement at sentencing, but then moved to correct his sentence under Federal Rule of Criminal Procedure 35(c). *See* 178 F.3d at 800. The Sixth Circuit's holding was therefore limited to the proposition that "[b]ecause the district court did not impose Durham's sentence as a result of 'arithmetical, technical, or other clear error,' the district court correctly held that it lacked jurisdiction to correct the sentence under Federal Rule of Criminal Procedure 35(c)." *Id.*

Nonetheless, in the course of reaching that conclusion, *Durham* offered an interpretation of § 3C1.2 now advanced by the government. Under *Durham*'s reasoning, Mr. Mitchell's offense guideline in Chapter Two did not *increase* by four levels but was rather *not decreased* by four levels. *See id.* ("Although the district court was unable to apply the four-level reduction for escape from a halfway house [under § 2P1.1(b)(3)], the court did not increase *Durham*'s offense level above the base offense level."). First, that interpretation is inconsistent with the text of note 1 to § 3C1.2, which

merely asks whether the same conduct resulted in an increased *offense level*, not whether it resulted in an increased *base* offense level or in the application of another enhancement. Here, Mr. Mitchell's alleged fleeing provides the only basis to potentially increase his offense level in Chapter Two from nine to thirteen. Second, *Durham*'s interpretation is needlessly formalistic. Regardless of the structure of § 2P1.1, Mr. Mitchell's alleged fleeing caused the functional equivalent of a 4-level increase in his offense level in Chapter Two, and note 1 to § 3C1.2 is satisfied whether that increase is characterized as a failure to reduce or an affirmative increase. Third, § 3C1.2 is at least ambiguous about its application to this circumstance, and *Durham*'s interpretation denies Mr. Mitchell the benefit of the rule of lenity. *See United States v. D.M.*, 869 F.3d 1133, 1144 (9th Cir. 2017) ("[T]he rule of lenity applies to the Sentencing Guidelines.").

**B.    The Ninth Circuit's rule against double counting prohibits applying the § 3C1.2 enhancement and denying the §2P1.1(b)(3) reduction for the same conduct.**

Ninth Circuit caselaw contravenes *Durham*. In this Circuit, "[i]mpermissible double counting occurs when one part of the Guidelines is applied to increase a defendant's punishment on account of a kind of harm that has already been fully accounted for by application of another part of the Guidelines." *United States v. Holt*, 510 F.3d 1007, 1011 (9th Cir. 2007) (internal quotation marks omitted); *United States v. Reese*, 2 F.3d 870, 894 (9th Cir. 1993) ("[T]he Sentencing Commission plainly understands the concept of double counting, and expressly forbids it where it is not intended[.]" (internal quotation marks omitted)). The Ninth Circuit has recognized that double counting is permissible "when each invocation of the behavior serves a unique purpose under the Guidelines." *Holt*, 510 F.3d at 1011 (quoting *United States v. Syrax*, 235 F.3d 422, 428 (9th Cir. 2000)). But where one discrete incident is used to increase punishment through two separate mechanisms without serving distinct sentencing purposes, the concern animating the prohibition is fully implicated — regardless of the technical label the Guidelines assign to either mechanism.

That is precisely what the government argues for here. There is no dispute that the government relies on a single alleged episode of conduct — one claimed incident of high-speed flight from law enforcement — to both trigger the two-level § 3C1.2 enhancement and eliminate the four-level reduction that would otherwise apply under § 2P1.1(b)(3). The net sentencing effect is therefore a *six-*

*level* swing in the Guidelines calculation, driven entirely by that alleged single evading episode. The two adjustments do not serve distinct purposes: both respond to the purported risk of harm caused by Mr. Mitchell's claimed flight. There is no separate harm — no analytically distinct wrong — that one accounts for and the other does not. Regardless of the Court's interpretation of note 1 to § 3C1.2, applying this enhancement and denying the reduction under § 2P1.1(b)(3) impermissibly double counts Mr. Mitchell's alleged evasion.

**V.     Regardless of the Court's guideline calculation, § 3553(a) warrants a sentence of time served.**

Even setting aside the technical Guidelines calculation, this Court retains full discretion to vary downward where the Guidelines produce a result that is greater than necessary to achieve the purposes of sentencing. *See United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). As the Ninth Circuit recognized in *Reese*, there is "nothing wrong with 'double counting' when it is necessary to make the defendant's sentence reflect the full extent of the wrongfulness of his conduct." 2 F.3d at 895. But the corollary is equally true: when a guideline calculation inflates a sentence beyond what the conduct warrants by running the same behavior through two separate punitive mechanisms — the resulting sentence is not properly tailored to fit the specific circumstances of the case.

Under § 3553(a)(2)(A), a sentence must reflect the seriousness of the offense and promote respect for the law, but it must not be "greater than necessary" to do so. A guidelines range driven by six levels of adjustment against Mr. Mitchell, all attributable to a single incident, produces a sentencing range that is unnecessarily inflated. The Commission's evident purpose in enacting the § 2P1.1(b)(3) reduction was to recognize that escape from a halfway house — a low-security, community-based placement — represents a lesser degree of culpability than escape from a more restrictive facility. The government's position, however, uses Mr. Mitchell's conduct to pile on as many enhancements as possible resulting in an artificially inflated sentencing range that is untethered from the conduct at issue. Whatever the Guidelines call that, the Court's obligation under § 3553(a) is to impose a sentence that is sufficient but not greater than necessary — and the sentence recommended by the government is anything but.

\* \* \*

DEFENDANT'S SENTENCING REPLY
*MITCHELL*, CR 25–384 SI

For all of the reasons set forth herein and in the defense's original sentencing memorandum, the Court should grant Mr. Mitchell the § 2P1.1(b)(3) reduction. Additionally, the Court should not apply the § 3C1.2 enhancement for the same conduct. In any event, the Court should impose a sentence that is sufficient, but not greater than necessary to serve the purposes of § 3553(a)—which in this case is time served.

## VI.    THE GOVERNMENT'S INVOCATION OF GANG LABELS AND THE DEATHS OF MR. MITCHELL'S BROTHERS DESERVES LITTLE WEIGHT.

Perhaps most striking about the government's sentencing memorandum is what it does with the deaths of Mr. Mitchell's brothers. Two of his brothers have been murdered — one shot in Vallejo, and another hunted down and killed inside a rehabilitation hospital steps from the very halfway house where Mr. Mitchell was placed. The defense raised these tragedies in its sentencing memo to explain the fear Mr. Mitchell experienced and the difficult position the Bureau of Prisons put him in by refusing to transfer him. The government's response is to cite those same deaths as evidence of his dangerousness — as proof of his gang ties and the violence that surrounds him. That is a remarkable inversion. The government takes the losses that shaped Mr. Mitchell's fear, informed his request for a transfer, and drove his misguided decision to leave, and turns them into aggravating factors. His brothers were victims. He was living in the shadow of their murders, in the location where one of them was killed. The murders of Mr. Mitchell's brothers are no reason to increase his sentence.

The same is true of the gang label the government attempts to pin on Mr. Mitchell. The government invokes this label as shorthand for danger and recidivism but offers nothing beyond police designations to support it. Mr. Mitchell grew up in very difficult circumstances, lost the people he lost, and carried the weight of that world. None of that is an excuse. But it is a reason for the Court to see him as a full person, and to impose a sentence that reflects who he is and what lies ahead, not simply the worst assumptions about where he comes from. Mr. Mitchell respectfully requests that the Court look past the government's labels and impose a sentence of time served.

Dated:     May 7, 2026

Respectfully submitted,

JODI LINKER
Federal Public Defender
Northern District of California

                    /S
KARTHIK RAJU
Assistant Federal Public Defender